AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>A grey 2010 Acura MDX, bearing Washington<br>license plate CGV8038, as further described<br>in Attachment A | )<br>)<br>)<br>)<br>)<br>) | Case No.    MJ23-410 |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of

__21__ U.S.C. §§ 841 & 846   . Therefore, in furtherance of a criminal investigation, I request authority to install and

use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The activity in this district relates to domestic or international terrorism.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A grey 2010 Acura MDX, bearing Washington license plate CGV8038, and the properties located at 2307 NE 4th St., Renton, WA 98056 and 952 SW Campus Dr., Federal Way, WA 98023, as further described in Attachment A.

☑ Delayed notice of __90__ days (give exact ending date if more than 30 days: __12/24/2023__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means ☐ telephonically recorded.

_____
*Applicant's signature*

Edward Dryer, Special Agent, DEA

*Applicant's printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

_____
*Judge's signature*

Date: __08/11/2023__

City and state: Seattle, Washington

Hon. Michelle L. Peterson, U.S. Magistrate Judge

*Printed name and title*

USAO# 2020R00998

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR VEHICLE TRACKING WARRANT

STATE OF WASHINGTON )
                         )    ss

COUNTY OF KING )

I, Edward Dryer, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION**

1.      I make this affidavit in support of an Application to obtain a tracking warrant for the following vehicle used by Ramon DUARTE-GARCIA:

a.      A grey 2010 Acura MDX, bearing Washington license plate CGV8038, with VIN number 2HNYD2H2XAH519699, registered to Wendy VEGA-CASTANEDA at 10908 SE 219th Pl., Kent, WA 98031, (hereinafter referred to as "**Target Vehicle 7**" or "**TV7**"), as described in attachment A.

2.      This is the third[1] application in this judicial district for a tracking warrant for **TV7**.

3.      Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 21 of the United States Code have been committed, are being committed, and will be committed by Ramon DUARTE-GARCIA. There is also probable cause to believe that Ramon DUARTE-GARCIA is using **TV7** in furtherance of these crimes and that the whereabouts of **TV7** over time will constitute evidence of those criminal violations. Obtaining the information sought in this Affidavit is necessary to further the investigation into these offenses.

---

[1] In the previous two applications, **TV7** was described as bearing Washington license plate CFX2377, with registration to Ramon Ernesto Duarte Garcia at 2307 NE 4th St., Apt. H206, Renton, WA 98056. As further detailed herein, despite the change in registration, investigators believe Ramon DUARTE-GARCIA is still the user of **TV7**.

**AGENT BACKGROUND**

4.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent (SA) with the DEA and have been since May 2021. I am currently assigned to the Seattle Field Division (DEA Seattle). In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801, et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, communication techniques, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, distribution, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances.

5.      As a DEA Special Agent, I have participated in controlled substance investigations that have resulted in the arrests of individuals, the seizures of illicit drugs and/or drug-related evidence, and the forfeiture of drug-related assets. I have been involved in the service of search warrants as part of these investigations. Because of my experience in serving these search warrants, I have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify what are likely illegal drugs by sight, odor, and texture.

6.      I have participated in the debriefing of witnesses and informants. I have also discussed and learned from other law enforcement investigators regarding methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement detection, and the laundering of proceeds, among other aspects of drug trafficking activity. I have

1 discussed and learned from other law enforcement investigators regarding these matters as
2 well.

3        7.     During my time as a DEA Special Agent, I have participated in investigations
4 that involved money launderers and drug traffickers using telephones to communicate with
5 their criminal associates and those working with law enforcement, such as confidential
6 informants, cooperating individuals, and undercover officers. I have interviewed
7 individuals who have been directly and indirectly involved in amassing, spending,
8 converting, transporting, distributing, laundering, and concealing proceeds of narcotics
9 trafficking. I have also worked and consulted with numerous law enforcement officers
10 experienced in narcotics and money laundering investigations. As a result, I am familiar
11 with how money launderers and drug traffickers speak to each other and generally conduct
12 business. For example, I am aware that money launderers and drug traffickers discussing
13 criminal matters over telephones often speak in code or in vague terms. I am also aware
14 that these subjects frequently (1) provide false or fictious subscriber information to the
15 service providers, (2) use phones with subscriber identities other than their own, and (3)
16 change phones to avoid detection by law enforcement. This training and experience form
17 the basis for my opinions expressed below.

18        8.     I have participated in the ongoing investigation, only a portion of which is
19 described in this affidavit, since October 2021. During that time, I have obtained the facts
20 set forth in this affidavit through personal participation in the investigation described
21 below, from oral and written reports of other law enforcement officers, from records,
22 documents and other evidence obtained during this investigation, and from confidential
23 sources and sources of information who are associated with, and knowledgeable about, the
24 subjects of this investigation and their confederates. I have obtained and read official
25 reports prepared by various law enforcement officers participating in this investigation and
26 in the other related investigations by agencies referenced in this affidavit.

27

AFFIDAVIT OF SA DRYER - 3
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      9.     Since this affidavit is submitted for the limited purpose of securing

2 authorization for a tracking warrant for **TV7**, I have not included every fact known

3 concerning this investigation. I have set forth the facts that I believe are necessary for a fair

4 determination of probable cause for the requested search/tracking warrants.

5                                  **PROBABLE CAUSE**

6      10.     This purpose of this affidavit is in support of an ongoing investigation into a

7 Drug Trafficking Organization (DTO) involved in a conspiracy to import and distribute

8 illegal narcotics, including methamphetamine, heroin, fentanyl and cocaine, from Mexico

9 into the United States, specifically the Western District of Washington. During the ongoing

10 investigation of this DTO, investigators have utilized telephone tracking, pen registers, and

11 vehicle tracking to acquire and assist in the acquisition of evidence of this ongoing

12 conspiracy. These techniques and the aforementioned acquired evidence have been utilized

13 in probable cause determinations by Magistrate Judges for the Western District of

14 Washington and the granting of search warrants, the executions of which have resulted in

15 the seizure of illegal narcotics, as well as U.S. Currency believed to be the proceeds of

16 narcotics.

17             **Use of Confidential Source – Confidential Source 1 (CS1)**

18      11.     Multiple confidential sources have been used as part of this investigation.

19 One of these cooperating sources is confidential sources is CS1. The information provided

20 by CS1 in this investigation is based upon controlled purchases of narcotics that he/she

21 performed at the direction of law enforcement beginning in          and continuing

22 until        . CS1 has also provided information based upon his/her prior involvement

23 in the DTO and his/her continuing personal relationship with certain DTO members.

24      12.     CS1 was previously a target of this investigation. Specifically, in    2020,

25 investigators surveilled CS1 at money pickups. In    2021, investigators observed CS1

26 conduct at least one suspected controlled substance transaction. In    2021, prior to any

27

AFFIDAVIT OF SA DRYER - 4
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   enforcement action, CS1 approached law enforcement to provide information about the
2   DTO with which he/she was associated.

3       13.    CS1 has no criminal/administrative arrest history. CS1 understands that
4   he/she must provide only truthful information to law enforcement investigators. To my
5   knowledge, CS1 has not provided false information during this, or in other investigations.
6   CS1 has been paid in this investigation both when he/she has provided information and
7   when he/she has engaged in undercover operations at the direction of law enforcement.
8   CS1 is also receiving immigration benefits, including deferred action and work
9   authorization.

10       14.    In     , shortly after CS1 began to cooperate with law enforcement, CS1
11   informed investigators that he/she believed that             had directed the
12   killing—in Mexico—of a family member or close friend of CS1. CS1 explained that this
13   event occurred approximately ten years prior, and that he/she was informed of the killing
14   and          alleged role in this event within a week of its occurrence.[2]

15       15.    In April 2023, investigators received information from Renton Police
16   Department that CS1 had been mentioned during the post-arrest interview of Rigoberto
17   CAMPOS-SAUCEDO ("CAMPOS-SAUCEDO"). During the interview, CAMPOS-
18   SAUCEDO identified Manuel GARCIA-HERNANDEZ, CS1, and Jaime CONTRERAS-
19   ROJAS as local drug traffickers. CAMPOS-SAUCEDO indicated that Jaime
20   CONTRERAS-ROJAS receives drugs from Manuel GARCIA-HERNANDEZ. CAMPOS-
21   SAUCEDO indicated that he/she thought CS1 was involved in narcotics trafficking
22   because of                          , and the fact that

23

---

24   [2] Though investigators were aware of this information at some point in 2021, for various reasons—
25   including investigator oversight, incomplete communication, the dated nature of this event, and
     the fact that investigators were able to corroborate much of the information provided by CS1—
26   investigators did not include this information in prior search warrant applications submitted to this
     Court, or King County Superior Court, as a potential basis for CS1's bias or motive to fabricate
27   allegations against         or members of the       in general.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  in 2022, CAMPOS-SAUCEDO made a money drop at an apartment where CS1 used to
2  reside. Investigators have not been able to confirm, or refute, the information provided by
3  CAMPOS-SAUCEDO suggesting CS1's continued involvement in drug trafficking
4  activities during his/her period of cooperation with law enforcement.

5      16.    CS1 lives in the community and has very close ties to some members of the
6  DTO and, therefore, wishes to remain anonymous for fear of reprisals and retribution.
7  However, CS1 has expressed a willingness to testify if his/her identity could be protected.

8      **Use of TT9, TT10 and TV4 During Controlled Purchase in          2023**

9      17.    In late          2023, CS1 provided investigators with information
10 regarding an individual known as "El Gordo." As detailed below, investigators
11 subsequently identified "El Gordo" as Ramon Ernesto DUARTE-GARCIA.

12     18.    CS1 stated that El Gordo was sent to Washington by associates of the
13 PEREZ-ROJAS DTO, but that El Gordo had a falling out with the DTO. However, CS1
14 stated that El Gordo was offering a variety of narcotics for sale. CS1 provided 206-849-
15 6553 (referred to in prior warrant applications and herein as "TT9") as a telephone number
16 utilized by El Gordo.

17     19.    In          2023, at the instruction of investigators, CS1 initiated
18 conversations with El Gordo for the purpose of conducting a controlled purchase of
19 narcotics. Investigators met with CS1 and instructed CS1 to place a phone call to El Gordo
20 over TT9. This phone call was monitored, recorded, and investigators confirmed the
21 destination number (TT9). During the conversation, El Gordo told CS1 that he (El Gordo)
22 had cocaine and heroin. CS1 requested that El Gordo deliver multiple ounces of heroin the
23 following day.

24     20.    The following day, in          2023, at 6:30 p.m., CS1 met with
25 investigators to conduct the controlled purchase planned with El Gordo. CS1's person and
26 his/her vehicle were searched and found to be clear of contraband and unauthorized items.
27 CS1 was provided with DEA buy funds to conduct the controlled purchase. CS1 was

1 subsequently maintained under surveillance and control until the conclusion of the
2 operation.

3     21. At 6:38 p.m.,[3] per the instruction of investigators, CS1 placed a monitored
4 and recorded phone call to TT9 to finalize the drug transaction with El Gordo. Investigators
5 confirmed the destination number for the phone call (TT9). During the phone call, El Gordo
6 told CS1 that he (El Gordo) would send a third party (hereinafter "the runner") to meet
7 with CS1. El Gordo stated he would contact the runner to see what time the runner could
8 meet CS1. As instructed by investigators, CS1 provided El Gordo with a meeting location
9 to conduct the transaction. During these preliminary conversations, CS1 also requested an
10 ounce of cocaine from El Gordo pursuant to investigators' instructions.

11     22. According to tolls records obtained from AT&T, at 6:40 p.m., i.e.,
12 immediately after the phone conversation with CS1, TT9 (El Gordo) placed a phone call
13 to 425-919-6467 (referred to in prior warrant applications and herein as "TT10"). This
14 phone contact was less than one minute in duration and may not have been completed.

15     23. At 6:45 p.m., TT10 placed a return outgoing call to TT9, which lasted over
16 one minute, and based upon its duration appeared to be a connected phone conversation.
17 Immediately after the phone contact between TT9 and TT10, El Gordo (TT9) utilized a
18 messaging application to advise CS1 that the runner would be available at 8:00 p.m. El
19 Gordo also provided a price that reflected the total price for three ounces of heroin and an
20 ounce of cocaine. CS1 received these messages at 6:47 p.m. Based on this exchange, and
21 the timing of the calls between TT9 and TT10, I believe that El Gordo utilized TT9 to
22 contact TT10 to find out when the runner would be available to meet CS1.

23     24. There were no additional toll records for TT9 until 8:01 p.m., when TT9 (El
24 Gordo) sent a series of texts, and a made brief phone call, to TT10 within one minute of
25 each other.

26

27   [3] All references herein to times, amounts of controlled substances, and currency are approximate

AFFIDAVIT OF SA DRYER - 7
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25. At 8:02 p.m., immediately after the texts and call between TT9 and TT10, TT9 (El Gordo) placed a phone call to CS1. At the time, CS1 was in place at the pre-arranged meeting location and the phone call was monitored by agents over a mobile transmitter. Immediately thereafter, CS1 reported to investigators that s/he had informed El Gordo that s/he was present at the meeting location and that El Gordo had reported that the runner was delayed, but was enroute to the meeting location. Based upon this exchange, I believe that El Gordo utilized TT9 to contact TT10 to ascertain the runner's status and subsequently reported this information to CS1.

26. At 8:19 p.m., TT9 (El Gordo) received an incoming call from TT10 (the runner) that lasted approximately six minutes.

27. At 8:31 p.m., TT9 (El Gordo) sent a message to CS1 advising that it would be ten more minutes before the runner arrived. Based upon this exchange, I believe that El Gordo (TT9) had received an update on the runner's status via a phone conversation with the runner (using TT10) and relayed that information to CS1.

28. At 8:40 p.m., TT9 (El Gordo) placed a brief phone call to TT10 (the runner), and immediately thereafter placed a brief phone call to CS1. During this phone call, El Gordo (TT9) informed CS1 that the runner would be arriving in a black Chrysler 300. At approximately the same time, toll records show that TT10 (the runner) was placing a call to TT9 (El Gordo). Within two minutes of this phone call, TT9 (El Gordo) placed another phone call to TT10 (the runner). Based upon this exchange, I believe that TT9 (El Gordo) and TT10 (the runner) were in contact with each other to confirm that the runner had arrived at the agreed upon meeting location, as well as to confirm the vehicle the runner was driving, and arrange the meeting with CS1.

29. At approximately the same time these phone calls were taking place, surveillance observed a black Chrysler 300 (referred to in prior warrant applications and

AFFIDAVIT OF SA DRYER - 8
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

herein as "TV4")[4] arrive at the pre-arranged meeting location and park near CS1. CS1 then exited her/his vehicle and entered the passenger side of TV4. After a brief time inside TV4, CS1 returned to his/her vehicle.

30. CS1 was subsequently debriefed by investigators. CS1 confirmed that the individual inside TV4 was El Gordo's runner. CS1 stated that the runner provided CS1 with a quantity of heroin and cocaine consistent with the agreement CS1 made with El Gordo, in exchange for the previously described official buy funds. Investigators obtained the multiple ounces of heroin and cocaine and remaining buy funds from CS1 which were consistent with investigators instructions and the phone conversations with El Gordo.

31. Meanwhile, other investigators followed TV4 from the meeting location directly to 3221 Meadow Ave. N., Renton, WA 98056, i.e., the residence listed on the registration for TV4. The driver of TV4 was observed walking from the vehicle and entering the front door of the residence located at 3221 Meadow Ave. N., Renton, WA 98056.

32. Based upon record checks related to TV4 and the residence at 3221 Meadow Ave. N., investigators located the Washington driver's license photograph of Humberto LOPEZ-RODRIGUEZ. When investigators presented this driver's license photograph to CS1, s/he confirmed that LOPEZ-RODRIGUEZ was the driver of TV4 and the runner who delivered drugs to CS1 on behalf of El Gordo.

**Identification of "El Gordo" as Ramon Ernesto DUARTE-GARCIA**

33. On March 22, 2023, United States Magistrate Judge Michelle L. Peterson issued an order authorizing the government to receive GPS location information for TT9. *See* MJ23-129 (W.D. Wash. March 22, 2023).

---

[4] TV4 was identified as bearing Washington license SM00921, a black Chrysler 300 sedan registered to Blanca Lopez Rodriguez at 3221 Meadow Ave N, Renton, WA 98056.

34. On March 28, 2023, investigators observed that TT9 was pinging in the vicinity[5] of 3221 Meadow Ave N., Renton, WA, i.e., the suspected residence of LOPEZ-RODRIGUEZ.

35. At 5:00 p.m., Investigators observed **TV7** parked near LOPEZ-RODRIGUEZ's residence. Based upon DOL records, investigators learned that **TV7** was, and remains, registered to Ramon Ernesto DUARTE-GARCIA at 2307 NE 4th St., Apt. H206, Renton, WA.

36. Investigators then obtained the Washington driver's license for Ramon Ernesto DUARTE-GARCIA. The address listed on DUARTE-GARCIA's driver's license was, and remains, 2307 NE 4th St., Apt. H206, Renton, WA. Investigators then provided DUARTE-GARCIA's driver's license photograph to CS1. CS1, who had previously met El Gordo in person, confirmed that DUARTE-GARCIA and "El Gordo" were the same person.

### Surveillance of DUARTE-GARCIA on March 29, 2023

37. On March 29, 2023, at 9:15 a.m., Task Force Officer (TFO) Jonathan Dittoe established surveillance at 2307 NE 4th St., Renton, WA. At the same time, TFO Dittoe and SA Dryer began monitoring the court-authorized GPS ping data for TT9. Investigators observed that TT9 was pinging within a 719-meter radius that included 2307 NE 4th St., Renton, WA.

38. At 9:25 a.m., TFO Dittoe observed a male matching the physical description of DUARTE-GARCIA walk around the north side of Building H with what appeared to be a white kitchen-sized garbage bag. The male walked towards **TV7** and TFO Dittoe observed the male enter **TV7**. TFO Dittoe then observed **TV7** depart the area.

---

[5] According to data provided by AT&T, on March 28, 2023, at 4:52 p.m., TT9 was located at coordinates 47.519565, -122.194994, with a 90 percent confidence level and a radius of 89 meters. The location provided for TT9 is approximately 355 meters from 3221 Meadow Ave N., Renton, WA.

AFFIDAVIT OF SA DRYER - 10
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

39.     At 10:00 a.m., TFO Dittoe observed pings for TT9 near the Safeway located at 4300 NE 4th St, Renton, WA 98059. TFO Dittoe drove to this address. As TFO Dittoe arrived at the Safeway, he observed **TV7** leaving the area.

40.     At 10:30 a.m., TFO Dittoe returned to 2307 NE 4th St., Renton, WA. TFO Dittoe observed that **TV7** was again parked in the parking lot for the apartment complex. TFO Dittoe noted that TT9 was again providing GPS ping data indicating that it was within a 719-meter radius that included 2307 NE 4th St., Renton, WA.

### Electronic and Video Surveillance of DUARTE-GARCIA on April 4, 2023

41.     On April 5, 2023, TFO Dittoe reviewed GPS ping data for TT9 and remote video surveillance for 3221 Meadow Ave N. Renton, WA.

42.     Based upon the review of this electronic surveillance, investigators know that on April 4, 2023, from 12:00 p.m. to 3:30 p.m., location data for TT9 indicated that TT9 was generally within a 246 – 2070-meter radius of DUARTE-GARCIA's suspected residence (2307 NE 4th St. Renton, WA).

43.     At 4:01 p.m., a camera monitoring the front of the residence located at 3221 Meadow Ave N. Renton, WA, recorded the arrival of **TV7**. Shortly thereafter, a male matching the physical description and appearance of DUARTE-GARCIA exited **TV7** and walked towards the front of the residence. DUARTE-GARCIA was met by a second male, matching the physical description and appearance of LOPEZ-RODRIGUEZ.

44.     At 4:11 p.m. and 4:26 p.m.—immediately following DUARTE-GARCIA's arrival at the residence—TT9 returned pings that were within a 223-meter radius that included 3221 Meadow Ave N. Renton, WA.

45.     At 4:34 p.m., DUARTE-GARCIA walked from the front of the residence to **TV7**. DUARTE-GARCIA was carrying a large white box, approximately the size of a dorm-style refrigerator. The box appeared to be relatively light from the manner of DUARTE-GARCIA's movements. DUARTE-GARCIA took the item to the rear of his vehicle and departed the location.

1    46.    At 4:42 p.m., consistent with investigators' observations from the remote
2    video surveillance camera, pings for TT9 indicated that the device was traveling away from
3    the residence located at 3221 Meadow Ave. N., Renton, WA.

4    47.    Based upon a review of ping data, it appears that at approximately 11:00
5    p.m., TT9 returned to DUARTE-GARCIA's suspected residence (2307 NE 4th St. Renton,
6    WA). After returning to the vicinity of 2307 NE 4th St. Renton, WA, the ping data for TT9
7    indicated that the device remained in the area overnight.

8    **DUARTE-GARCIA uses TT9 and TV7 during Controlled Purchase on** 
9    

10    48.    On            , 2023, CS1 spoke with DUARTE-GARCIA via cellular call on
11    TT9. Investigators were not present for the call. However, CS1 recorded the call and
12    provided the recording to investigators. Based upon a review of the recording, investigators
13    know that CS1 and DUARTE-GARCIA discussed a controlled purchase in the coming
14    days. During the call, DUARTE-GARCIA advised CS1 that he could only supply heroin
15    and cocaine at that time.

16    49.    On            2023, CS1 spoke with DUARTE-GARCIA via cellular call on
17    TT9. Investigators were not present for this call either. However, CS1 again recorded the
18    call and provided the recording to investigators. Based upon a review of the recording,
19    investigators know that DUARTE-GARCIA and CS1 agreed to meet on            2023,
20    for a deal involving CS1's purchase of four ounces of heroin and one ounce of cocaine
21    from DUARTE-GARCIA.

22    50.    On            2023, at 6:00 p.m., surveillance was established at the Brighton
23    Ridge Apartments located at 2307 NE 4th St., Renton, Washington. Based upon a review
24    of Washington DOL records, investigators had previously identified apartment H206 as a
25    suspected residence of DUARTE-GARCIA. Det. Chin observed **TV7** parked in spot #101,
26    which is located nearby Building H.

27

AFFIDAVIT OF SA DRYER - 12                          UNITED STATES ATTORNEY
USAO #2020R00998                                    700 STEWART STREET, SUITE 5220
                                                    SEATTLE, WASHINGTON 98101
                                                    (206) 553-7970

51.     At 6:30 p.m., Group Supervisor (GS) Rojas, SA Feder, and SA Dryer met with CS1 at a staging location. At the staging location SA Dryer searched CS1. SA Feder searched CS1's vehicle. No contraband was found.

52.     While at the staging location, and in the presence of investigators, CS1 placed two cellular calls to TT9 (DUARTE-GARCIA). These calls were monitored and recorded. During the first call DUARTE-GARCIA told CS1 that he only had cocaine available and that the price was $750 per ounce.

53.     During the second call CS1 ordered four ounces of cocaine. DUARTE-GARCIA also told CS1 that he would be delivering the drugs himself. DUARTE-GARCIA told CS1 that he was at home and told CS1 to call him once CS1 was in Renton, WA.

54.     After the second call, SA Dryer provided $3,000 of official funds to CS1 to complete the controlled purchase of four ounces of cocaine. Investigators then followed CS1 as CS1 drove from the staging location to the deal location.

55.     At 7:20 p.m., TFO Dittoe observed an individual, later confirmed to be DUARTE-GARCIA,[6] exit the north stairwell of Building H at the Brighton Ridge Apartments located at 2307 NE 4th St., Renton, Washington. DUARTE-GARCIA was wearing a ball cap, green sweatshirt, and gray pants. Investigators then observed DUARTE-GARCIA walk to and enter **TV7**. Investigators followed **TV7** as it traveled to the pre-arranged meeting location.

56.     SA McDowell observed DUARTE-GARCIA arrive at the meeting location in **TV7** at 7:25 p.m. Investigators then observed DUARTE-GARCIA exit **TV7** and enter the passenger side of CS1's vehicle. After a brief meeting in CS1's vehicle, DUARTE-GARCIA returned to **TV7**. After the deal, investigators maintained surveillance of **TV7**.

---

[6] TFO Dittoe took a picture of DUARTE-GARCIA as he was departing Building H. Based upon comparison of that photo with DUARTE-GARCIA's Washington driver's license photo, TFO Dittoe confirmed that the individual he observed at the Brighton Ridge Apartments was DUARTE-GARCIA.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Investigators noted that DUARTE-GARCIA appeared to drive in a circuitous route on his
2    way back to the Brighton Ridge Apartments.

3         57.    At 7:40 p.m., TFO Dittoe observed **TV7** return to the Brighton Ridge
4    Apartments. DUARTE-GARCIA remained in the vehicle for a brief time. Investigators
5    then observed DUARTE-GARCIA exit **TV7**, walk toward Building H, and ultimately enter
6    unit H206.

7         58.    At 7:50 p.m., SA Dryer, GS Rojas, and SA Feder met CS1 at a debrief
8    location. CS1 provided SA Dryer a Ziploc bag wrapped in blue plastic containing suspected
9    cocaine. SA Dryer then searched CS1 and his/her vehicle. No contraband was found.

10        59.    During the debrief, CS1 confirmed that DUARTE-GARCIA provided CS1
11   with the bag containing suspected cocaine. CS1 further confirmed that s/he paid DUARTE-
12   GARCIA $3,000 for the suspected cocaine. CS1 further stated that DUARTE-GARCIA
13   told CS1 that he would have a load coming up in approximately fifteen days, and that the
14   load would contain cocaine, fentanyl powder, and heroin. CS1 further indicated that
15   DUARTE-GARCIA indicated that he could now supply fentanyl powder and would charge
16   $750 per ounce.

17        60.    At 9:00 p.m., investigators weighed and field-tested the suspected cocaine
18   that had been provided to CS1 witnessed by SA Dryer field tested the suspected cocaine
19   and the exhibit tested positive for cocaine.

20        **Surveillance of TV7 on May 9, 2023**

21        61.    On May 9, 2023 TFO Jorge Bourdon conducted surveillance at the Brighton
22   Ridge Apartments located at 2307 NE 4th St., Renton, WA. At 7:15 a.m., TFO Bourdon
23   noted that **TV7** was parked in the parking lot for the apartment complex in covered space
24   #9.

25   //

26   //

27   //

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Surveillance of Ramon DUARTE-GARCIA on May 30, 2023**

62.     On May 30, 2023 TFO Dittoe conducted surveillance at the Brighton Ridge Apartments located at 2307 NE 4th St., Renton, WA. At 11:00 a.m., TFO Dittoe noted that **TV7** was parked in the parking lot in front of Building H.

63.     At 2:00 p.m., TFO Dittoe noted that the vehicle was no longer in the parking spot.

64.     At 3:20 p.m., TFO Dittoe observed **TV7** return to the Brighton Ridge Apartments and park in front of Building H. TFO Dittoe confirmed that the driver of **TV7** was DUARTE-GARCIA. TFO Dittoe then observed that, after exiting **TV7**, DUARTE-GARCIA walked from the vehicle into the stairwell on the north side of Building "H."

**Controlled Purchase from DUARTE-GARCIA on          2023**

65.     On          2023, CS1 spoke with DUARTE-GARCIA via cellular call on TT9. Investigators were not present for the call. However, CS1 recorded the call and provided the recording to investigators. During that call, as well as text messages on the same day, CS1 and DUARTE-GARCIA discussed a purchase of four ounces of fentanyl powder. CS1 and DUARTE-GARCIA agreed to conduct the deal the following day.

66.     On          , 2023, at 7:15 p.m., surveillance was established at the Brighton Ridge Apartments located at 2307 NE 4th St., Renton, Washington. Investigators attempted to locate **TV7** in the parking lot for the Brighton Ridge Apartments, but did not locate **TV7** at that time.

67.     At 7:15 p.m., TFO Bourdon, GS Rojas, and SA Dryer met with CS1 at a staging location. In the presence of investigators, CS1 placed a cellular call to TT9. Investigators monitored and recorded this phone call. During this call, CS1 and DUARTE-GARCIA agreed to meet at a parking lot in Renton, WA, to conduct the deal for fentanyl powder.

68.     While at the staging location, investigators searched CS1 and CS1's vehicle. No contraband was found. TFO Bourdon also transferred $3,000 of official funds to CS1

AFFIDAVIT OF SA DRYER - 15
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to complete the controlled purchase of four ounces of fentanyl powder. Investigators then
2  followed CS1 as CS1 drove from the staging location to the deal location.

3      69.    At 8:15 p.m., investigators observed **TV7** arrive at the deal location and park
4  next to CS1's vehicle. Investigators then observed DUARTE-GARCIA exit **TV7** and enter
5  CS1's vehicle. Approximately five minutes later, investigators observed DUARTE-
6  GARCIA exit CS1's vehicle and return to **TV7**. Investigators then followed **TV7** as it left
7  the area.

8      70.    At 8:30 p.m., SA Dryer, GS Rojas, and TFO Bourdon met CS1 at a debrief
9  location. CS1 provided TFO Bourdon suspected fentanyl powder wrapped in blue plastic
10  (later determined to be 143.3 grams with packaging). Investigators then searched the CS1's
11  vehicle and person. No contraband was found. During the debrief, CS1 confirmed that
12  DUARTE-GARCIA provided CS1 with the bag containing suspected fentanyl and that s/he
13  paid DUARTE-GARCIA $3,000 for the suspected fentanyl. CS1 further indicated that
14  DUARTE-GARCIA had told CS1—in apparent reference to the prior controlled purchase
15  of cocaine from DUARTE-GARCIA on          2023—that, this time, the drugs were of
16  better quality.

17  **Investigators Install Tracker on TV7 on June 22, 2023**

18      71.    On June 21, 2023, United States Magistrate Judge Brian A. Tsuchida signed
19  a court order authorizing the installation of a GPS tracking device on **TV7**. *See* MJ23-316
20  (W.D. Wash. June 21, 2023). On June 22, 2023, investigators installed a GPS tracking
21  device on **TV7**.

22  **Traffic Stop of Ramon DUARTE-GARCIA on July 14, 2023**

23      72.    On July 14, 2023, Fresno County Sheriff's Office—in conjunction with
24  investigators from DEA Seattle and DEA Fresno—conducted a vehicle stop of a white
25  Honda Accord (hereinafter "the white Honda Accord") that was being driven by
26  DUARTE-GARCIA. Based upon a GPS ping data for TT9 and physical surveillance
27  conducted in Southern California, investigators know that DUARTE-GARCIA had driven

from Seattle, Washington to the greater Los Angeles, California area in the days preceding the traffic stop. According to GPS tracking device installed on **TV7**, during DUARTE-GARCIA's trip to California, **TV7** remained parked at, or near, the Glen Park at West Campus Apartments located at 952 SW Campus Drive, Federal Way, Washington (hereinafter the "Glen Park at West Campus Apartments").

73.     During the vehicle stop, investigators seized, from the white Honda Accord, 10.8 kilograms of suspected methamphetamine, which was packaged in approximate one-pound bags.[7] Investigators also seized, from the vehicle, a Glock model 20 10mm semi-automatic pistol and approximately $10,000 U.S. currency. Investigators also discovered a hidden compartment, or "trap," within the white Honda Accord. The trap was empty. DUARTE-GARCIA was charged with State of California offenses relating to drug trafficking and taken into custody. On July 19, 2023, DUARTE-GARCIA was released from state custody.

**DUARTE-GARCIA Returns to Washington and TV7 Later Travels to Salem, Oregon – July 2023**

74.     On July 25, 2023, and July 26, 2023, investigators observed DUARTE-GARCIA at the Glen Park at West Campus Apartments. During this surveillance, investigators observed DUARTE-GARCIA access **TV7**. Investigators also observed DUARTE-GARCIA talking on a cell phone. Per a review of the GPS tracking data for

---

[7] On August 1, 2023, DEA Fresno investigators informed SA Dryer that the Forensic Laboratory for the Fresno County Sheriff's Office ("FCSO") had completed an analysis of the 10.8 kilograms of methamphetamine. According to FCSO testing, approximately twelve of the one-pound bags that were tested contained methamphetamine. However, nine of the one-pound bags that were tested did not contain a controlled substance. Three of the one-pound bags were not tested. Investigators do not know definitively why nine of the one-pound bags tested did not contain controlled substances. However, based upon their training and experience, investigators know that drug traffickers will sometimes attempt to pass-off sham controlled substances for actual controlled substances, and/or mix controlled substances with another, non-controlled substance, to increase the overall weight of their supply. These techniques can be a way that a specific drug trafficker would attempt to increase the overall profitability of their drug sales.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**TV7**, investigators believe that DUARTE-GARCIA now lives at the Glen Park at West Campus Apartments. Investigators have not yet identified the specific apartment in which DUARTE-GARCIA is living within the complex.

75.    On July 26, 2023, TFO Dittoe observed DUARTE-GARCIA driving **TV7** in Sumner, WA. Per vehicle tracking data for **TV7**, DUARTE-GARCIA pulled into the truck-only parking area of the Sumner Truck Stop and Travel Plaza located at 136th Ave. E., Sumner, WA. Approximately ten minutes later, TFO Dittoe observed **TV7** had pulled to the front gas station area of the truck stop. **TV7** then left the area.

76.    Investigators noted that, based upon the GPS tracking data, on July 27, 2023, **TV7** traveled to Salem, Oregon. The tracking data showed that **TV7** remained in Salem, Oregon for approximately two and a half hours. After this short stop, the vehicle returned to Washington. Based upon their training and experience, and the investigation to date, investigators believe that this trip may have involved DUARTE-GARCIA picking up additional controlled substances.

### TV7 Makes Second Trip to Salem, Oregon on August 3, 2023

77.    Investigators noted that, based upon the GPS tracking data, on August 3, 2023, **TV7** again traveled to Salem, Oregon. The tracking data showed that **TV7** remained in Salem, Oregon for approximately one and a half hours. After this short stop, the vehicle returned to Washington. Based upon the duration of the stop and the fact that **TV7** made a similar trip the week prior, investigators believe that this second trip also related to the pick-up of additional controlled substances by DUARTE-GARCIA.

### Investigators Obtain Renewal for TV7 Tracker on August 4, 2023

On August 4, 2023, United States Magistrate Paula L. McCandlis signed a court order authorizing the continued GPS tracking of **TV7**. *See* MJ23-393 (W.D. Wash. August 4, 2023).

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Surveillance of TV7 on August 8, 2023**

78.     On August 8, 2023, at 2:40 a.m., investigators established surveillance at 952 SW Campus Dr, Federal Way, WA 98023. The purpose of this surveillance was to switch-out the tracker that had been initially installed on **TV7** on June 22, 2023, and reauthorized on August 4, 2023.

79.     During this surveillance, investigators noted that **TV7** was no longer bearing Washington license plate CFX2377. Rather, **TV7** now was bearing Washington license plate vehicle CGV8038. Investigators then re-checked Washington DOL records and located what appeared to be two current registrations for **TV7**. The first record showed that—despite the observed change in plates—**TV7** was still listed as registered to Ramon Ernesto Duarte Garcia at 2307 NE 4th St., Apt. H206, Renton, WA 98056. The second record indicated that registration for **TV7** had been issued under the new plate, i.e., CGV8038, on July 28, 2023.[8] The VIN number associated with both registrations was the same.

**Surveillance of TV7 and Ramon DUARTE-GARCIA on August 9, 2023**

80.     On August 9, 2023, at 2:50 p.m., while conducting surveillance at the Glen Park at West Campus Apartments, TFO Dittoe observed Ramon DUARTE-GARCIA and a known drug trafficking associate—Humberto LOPEZ-RODRIGUEZ—unloading what appeared to be exercise equipment and other household items from **TV7**. TFO Dittoe noted that Ramon DUARTE-GARCIA was accessing the driver's seat of the vehicle.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

81.     Based upon my experience and training as well as conversations I have had with other agents and law enforcement officers who specialize in narcotics investigations, including investigations into the laundering of narcotics trafficking proceeds, and I am

---

[8] Based upon discussions with experienced narcotics investigators, I know that, as a means of evading law enforcement detection, individuals that engage in the illicit distribution of controlled substances will commonly re-register the same vehicle under a new name and with a new address.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

familiar with the methods, tactics, and techniques utilized by narcotics trafficking/money laundering organizations. I have spoken with federal agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. Through my conversations with these agents and other law enforcement officers, I am knowledgeable in the methods and modes of narcotics trafficking/money laundering operations.

82. In my experience, GPS location data garnered from either cellular GPS ping warrants or vehicle tracking warrants has yielded information that is relevant and material to drug trafficking investigations. Such information includes, but is not limited to: (1) the identities of suspected suppliers, customers, and other potential conspirators who assist in the distribution of controlled substances; (2) the location of meetings between conspirator sand "stash" houses where illicit substances are stored; (3) the locations used by the targets for drug distribution; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with co-conspirators; (5) the geographical breadth of the suspected drug trafficking; and (6) the identity of co-conspirators, potential organizers, leaders, managers, or supervisors of the suspected trafficking and distribution organizations, by examining the transportation patterns and utilizing surveillance to identify all the potential targets.

83. Additionally, based upon my training and experience, one way to identify co-conspirators is to covertly follow suspect vehicles known to be utilized in furtherance of drug trafficking offenses with the aid of electronic tracking devices, and then to conduct an investigation concerning those names and addresses identified through surveillance. Based upon electronic tracking device data, I would then direct other investigators to conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could yield potential names and conspirators, and potential drug storage locations used by the organization. Obtaining this electronic tracking device data for **TV7** is critical to accurately identify co-conspirators and locations.

AFFIDAVIT OF SA DRYER - 20
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## AUTHORIZATION REQUEST FOR TARGET VEHICLE 7

84.     Based on the foregoing, I respectfully submit there is probable cause to believe that Ramon Ernesto DUARTE-GARCIA is using **TV7** in furtherance of drug trafficking, including violations of Title 21 of the United States Code. Installing a tracking device and obtaining real time GPS tracking data on the location of the **TV7** is necessary and appropriate to aid the investigation of this drug trafficking organization. This Application is part of an ongoing investigation into a drug trafficking organization with associates both known and unknown. "Real time" GPS data on the **TV7** used by DUARTE-GARCIA would assist investigators in identifying DUARTE-GARCIA's associates, their residences, and possibly any stash location used by DUARTE-GARCIA. Investigators would be able to easily locate **TV7** in order to conduct surveillance of **TV7**, which could lead to identifying other co-conspirators and/or sources of supply. Accordingly, there is probable cause to believe that tracking this vehicle will reveal evidence, fruits, and instrumentalities of Title 21, United States Code, Sections 841 and 846.

85.     I respectfully request that the Court issue a warrant authorizing members of the DEA, or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on **TV7** within the Western District of Washington within 10 days of the issuance of the requested warrant, and to remove said tracking device from **TV7** after the use of tracking devices has ended; to surreptitiously enter the property located at 952 SW Campus Dr., Federal Way, WA 98023, and 2307 NE 4th St., Renton, WA 98056, where the **TV7** may be parked, and/or move **TV7** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device, for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Western District of Washington.

AFFIDAVIT OF SA DRYER - 21
USAO #2020R00998

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

86.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice to the registered owner / user of **TV7** until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the registered owner or user of **TV7** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

87.     I further request that the Court authorize execution of the warrant (i.e., installation, monitoring, and removal) at any time of day or night, owing to the potential need to locate **TV7** outside of daytime hours.

88.     I further request that the Court order that all papers in support of this Application, including the Affidavit, Search Warrants, and all related documents, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there

//

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Edward Dryer, DEA
Special Agent

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on the 11th day of August, 2023.

HON. MICHELLE L. PETERSON
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A

This warrant shall authorize agents with the Drug Enforcement Administration and other law enforcement agents/officers/technicians working with them, to place an autonomous GPS tracking device on the target vehicles described below:

a. **Target Vehicle 7 (TV7)**: A grey 2010 Acura MDX, bearing Washington license plate CGV8038, with VIN number 2HNYD2H2XAH519699, registered to Wendy VEGA-CASTANEDA at 10908 SE 219th Pl., Kent, WA 98031.

Agents are authorized to:

a. install, remove, monitor, repair, or adjust an electronic tracking device on or within the vehicle at any time of the day or night;

b. if necessary to protect the safety of persons installing, removing, monitoring, repairing, or adjusting the electronic tracking device, or to protect the integrity of the investigation, surreptitiously enter the subject vehicle at any time of the day or night, and move the subject vehicle from one location to another for the purpose of installing, removing, monitoring, repairing, or adjusting the device;

c. surreptitiously re-enter the subject vehicle at any time of the day or night, for the purpose of installing, removing, monitoring repairing, or adjusting the device;

d. continuously monitor any and all signals emitted from the device, including when the vehicle enters any structure or private property in which there may be a reasonable expectation of privacy; and

e. move one or more tracker back and forth between Target Vehicles during the authorized tracking period as surveillance suggests would be most productive, with "execution" of the warrant having been accomplished if at least one tracker is installed on one Target Vehicle within ten days of issuance of the warrant.

**Private Property**

In addition to entering **Target Vehicle 7**, Agents may surreptitiously enter all driveways, roadways, parking areas (including any enclosed garage structure), and other

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 places where **Target Vehicle 7** may be parked at the following locations, in order to

2 access the above-described vehicle pursuant to the warrant, at any time of the day or

3 night:

4         a.     2307 NE 4th St., Renton, WA 98056; and

5         b.     952 SW Campus Dr., Federal Way, WA 98023.

6       This authorization continues in any jurisdiction where **Target Vehicle 7** may move

7 for a period not to exceed forty-five (45) days.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970